IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA GRAY,<br><br>                Plaintiff,<br><br>    v.<br><br>ALLEN HARIM FOODS, LLC, and<br>HARIM USA,<br><br>                Defendants. | CIVIL ACTION<br>NO. 22-1172 |

**OPINION**

**Slomsky, J.**                                                                                                                              **August 5, 2024**

## I.     INTRODUCTION

This action arises out of alleged workplace discrimination. On December 12, 2022, Plaintiff Paula Gray ("Plaintiff") filed a First Amended Complaint against Defendant Allen Harim Foods, LLC ("Allen Harim") and Harim USA ("Harim USA") (collectively "Defendants"), alleging Defendants: (1) retaliated and/or discriminated against her in violation of the Family and Medical Leave Act of 1993, as Amended, 29 U.S.C. § 2614(B) ("FMLA") (Count I), (2) discriminated against her on the basis of her sex pursuant to Title VII of the Civil Rights Act of 1964, as Amended 42 U.S.C. § 2000(e), et seq. (Count II), (3) discriminated against her on the basis of her sexual orientation pursuant to Title VII of the Civil Rights Act of 1964, as amended § 2000 (Count III), and (4) discriminated against her on the basis of her age pursuant to the Age Discrimination in Employment Act, as amended 29 U.S.C. § 621 ("ADEA") (Count IV). (See Doc. No. 11.)

On March 19, 2024, Defendants filed a Motion for Partial Summary Judgment and for Judgment on the Pleadings on the Issue of Constructive Discharge. (Doc. No. 29.) On April 16,

2024, Plaintiff filed a Response in Opposition. (Doc. No. 36.) On April 23, 2024, Defendants filed a Reply. (Doc. No. 37.) For reasons that follow, Defendants' Motion for Partial Summary Judgment and Motion for Judgment on the Pleadings will be denied.

## II.  BACKGROUND

Defendant Harim USA is a Delaware corporation and a subsidiary of Harim Holdings Corporation ("Harim Holdings"), a Korean corporation located in Seoul, South Korea. (Doc. No. 36-2 at ¶ 3.) Harim Holdings is also the parent company of Defendant Allen Harim. (Id.) Defendant Allen Harim is a poultry processing company. (Doc. No. 29-3 at ¶ 12.)

Plaintiff was an employee of Defendant Allen Harim from 1989 until 2021. (Doc. No. 11 at ¶¶ 1, 65.) During that time, Plaintiff worked in a variety of positions including Line Supervisor, Human Resources Manager, Senior Human Resources and Labor Relations Manager. (Id. at ¶¶ 12, 15, 22, 25; Doc. No. 29-3 at ¶ 13.) Plaintiff is a 62-year-old gay woman who resides in Rehoboth Beach, Delaware, with her spouse who is a woman. (Doc. 11 at ¶ 1.) Plaintiff and her wife have been married since 2014. (Id.)

In December 2020, Plaintiff was promoted to the position of Human Resources Manager of the Allen Harim's Harbeson Poultry Plant (the "Harbeson Position") and earned $123,000 per year. (Doc. No. 29-3 at ¶¶ 14-15.) On February 8, 2021, Plaintiff earned another promotion to Senior Manager of Human Resources and earned $140,000 a year. (Doc. No. 29-3 at ¶ 16.)

On May 21, 2021, Plaintiff's wife, Lori, broke her tibial plateau. (Doc. No. 29-3 at ¶ 17.) As a result, Plaintiff's wife underwent multiple surgeries and required fulltime care. (Doc. No. 36-4 at 5-6.) To care for her wife, Plaintiff went on leave pursuant to the Family and Medical Leave Act ("FMLA"). (Id.) Plaintiff was approved for twelve weeks of leave but returned to work after four weeks. (Id.)

2

### A. Plaintiff's Return from FMLA Leave

On June 21, 2021, Plaintiff physically returned to work as Senior Manager of Human Resources but remained on intermittent FMLA leave. (Doc. No. 11 at ¶ 47; Doc. No. 29-3 at ¶ 19.) On June 22, 2021, Tom Saufly, Allen Harim Corporate Safety Manager, unexpectedly resigned. (Doc. No. 29-3 at ¶ 20.) The same day, Mickey Baugher, Allen Harim's Chief Executive Officer, and Brian Hildreth, Chief Financial Officer, met with Plaintiff. (Doc. No. 36-2 at ¶ 52.) Defendants maintain that they offered Plaintiff the position of Corporate Safety Manager. (Doc. No. 29-3 at ¶ 21.) To the contrary, Plaintiff alleges Baugher and Hildreth informed her of their decision to move her to Saufly's previous position as Corporate Safety Manager and she was not given a choice in the matter. (Doc. No. 36-2 at ¶ 53.)

At the meeting, Plaintiff contends that Baugher stated: "[i]t is my job to make sure that people... are seated in the proper place on the bus. And we are moving you to the Corporate Safety Manager position at [a] wage of $123,000." (Doc. No. 36-1 at ¶ 40.) The Corporate Safety Manager position paid $17,000 less than Plaintiff's previous position as Senior Manager of Human Resources and had worse benefits including life insurance coverage. (Doc. No. 36-4 at 71-72.) Following this meeting, Baugher emailed Plaintiff a formal offer letter and gave Plaintiff five (5) days to respond. (Doc. No. 29-3 at ¶ 21; Doc. No. 29-1 at 26, 24.)

On June 23, 2021, Baugher invited Plaintiff to his office and asked if she intended to accept the Corporate Safety Manager position. (Doc. No. 36-1 at ¶ 42; Doc. No. 36-4 at 19.) Plaintiff asked him about the reduction in pay and Baugher did not agree to match Plaintiff's former salary of $140,000 because he believed $123,000 was "fair" for the position. (Doc. No. 36-1 at ¶¶ 43-44; Doc. No. 36-4 at 19.) However, Baugher suggested that Plaintiff could make up the difference

3

in a bonus.  (Doc. No. 36-1 at ¶ 44.)  Plaintiff alleges that Defendants did not have a formal bonus program and had not paid out bonuses for years.  (Id.)

At some point, Plaintiff was informed that while she was on FMLA leave, Defendants hired Halimah Abdullah, a woman thirty years younger than Plaintiff, for the Corporate Human Resources Manager Position.  (Doc. No. 36-1 at ¶ 48; Doc. No. 36-4 at 17.)  Plaintiff alleges that Baugher informed her that he wanted to make an announcement to the entire company that Plaintiff would assume the Corporate Safety Manager position and Abdullah would take over Plaintiff's position as Human Resources Senior Manager.  (Doc. No. 36-1 at ¶ 46; Doc. No. 36-4 at 80-81.)  Plaintiff accepted the Corporate Safety Manager position on this same day.  (Doc. No. 29-3 at ¶ 25.)

On July 5, 2021, Abdullah began working at Allen Harim.  (Doc. No. 36-1 at ¶ 50.)  During this time and until Plaintiff assumed her new position as Corporate Safety Manager, Plaintiff worked in a temporary office in the medical department.  (Doc. No. 36-1 at ¶ 51; Doc. No. 36-4 at 23.)  Plaintiff was required to onboard Abdullah, including teaching Abdullah how to use the company's reporting systems.  (Doc. No. 36-1 at ¶ 49; Doc. No. 36-4 at 20.)  On July 12, 2021, Plaintiff started working as Corporate Safety Manager.  (Doc. No. 29-3 at ¶ 27.)  In this role, Hildreth was Plaintiff's supervisor and was "happy to have [Plaintiff] on board."  (Doc. No. 29-3 ¶ 28.)  Angel Berrocal, Allen Harim's Risk Manager was also "happy that [Plaintiff] was in that [corporate safety manager position]."  (Id.)

**B. Plaintiff's Resignation from Allen Harim**

After these events, Plaintiff lost trust in Defendants' management.  (Doc. No. 36 at 3.)  Plaintiff heard from two (2) members of Defendants' management team that Defendants "intended to fire her but that the company was being careful about how it would 'get rid of [her].'"  (Doc.

4

No. 36 at 3-4; Doc. No. 36-4 at 107.)  Plaintiff believed that Defendants would fire her at any moment.  (Doc. No. 36 at 3; Doc. No. 36-4 at 86.)

On July 22, 2021, Plaintiff sent a letter to Harim Group, Defendant Allen Harim's corporate parent, complaining of the alleged discrimination she faced.  (Doc. No. 29-3 at ¶ 32.)  In the letter, Plaintiff complained of pay and assignment disparities, and of FMLA violations due to Defendants hiring Abdullah while Plaintiff was out on FMLA leave.  (Doc. No. 29-1 at 15-18.)  On the same day, Plaintiff submitted her letter of resignation.  (Doc. No. 29-3 at ¶ 33.)

When Baugher learned of Plaintiff's resignation, Baugher asked Plaintiff how Defendants could retain her and whether the decision to resign was about the salary decrease.  (Id. at ¶ 35; Doc. No. 29-1 at 8.)  Defendants allege that Plaintiff knew Baugher and Hildreth were willing to pay Plaintiff more to keep her from leaving.  (Doc. No. 29-3 at ¶ 37.)  Plaintiff alleges to the contrary that she did not know if Defendants would have offered her more money prior to resigning.  (Doc. No. 36-1 at ¶ 37.)  On July 26, 2021, Plaintiff was offered a severance package but declined to take it.  (Doc. No. 29-3 at ¶ 38.)  Plaintiff officially stopped working for Defendants on August 4, 2021.  (Id.)

### C. The Instant Case

On September 6, 2022, Plaintiff filed the Complaint against Defendants.  (Doc. No. 1.)  On December 12, 2022, Plaintiff filed a First Amended Complaint, which is the operative Complaint in this case.  As noted earlier, she alleges that Defendants committing the following violations: (1) retaliation and/or discrimination under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2614 (B) ("FMLA") (Count I), (2)  discrimination against her on the basis of her sex pursuant to Title VII of the Civil Rights Act of 1964, as Amended 42 U.S.C. § 2000 (e), et seq. (Count II), (3)  discrimination against her on the basis of her sexual orientation pursuant to Title

VII of the Civil Rights Act of 1964, as amended § 2000 (Count III), and (4) discrimination on the basis of her age pursuant to the Age Discrimination in Employment Act, as amended 29 U.S.C. § 621 ("ADEA") (Count IV). (See Doc. No. 11.) On March 19, 2024, Defendants filed a motion for Partial Summary Judgment and Judgment on the Pleadings on the Issue of Constructive Discharge. (Doc. No. 29.) On April 16, 2024, Plaintiff filed a Response in Opposition (Doc. No. 36) and on April 23, 2024, Defendants filed a Reply. (Doc. No. 37.) Defendants' Motion for Partial Summary Judgment is now ripe for disposition.

### III.  STANDARD OF REVIEW

#### A. Summary Judgment Standard Pursuant to Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, a court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment demonstrates that no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor. (Id.) (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)). The Court's task is not to resolve disputed issues of fact, but to determine whether any factual issues exist to be tried. Anderson, 477 U.S. at 247–249. At the summary judgment stage, when a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the nonmoving party's evidence over the moving party's evidence. (Id. at 255.) If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. (Id. at 250.)

When opposing summary judgement, the nonmoving party may not rely solely on unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Liberty Lobby, 477 U.S. at 248. In ruling on Defendant's Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient. Id. at 252. Enough evidence must exist such that a jury could reasonably find for Plaintiff. Id. Plaintiff cannot merely rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985). If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez, 585 F.3d at 771.

**B. Judgment on the Pleadings Standard Pursuant to Federal Rule of Civil Procedure Rule 12(c)**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding a motion for judgment on the pleadings, a court must consider only "the complaint, exhibits attached to the complaint,

7

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). If a court considers documents outside of the pleadings, a motion for judgment on the pleadings is converted to a motion for summary judgment. See Moco Invs., Inc. v. United States, 3622 Fed. App'x 305, 307 n. 4 (3d Cir. 2010).

A motion for judgment on the pleadings is "analyzed under the same standards that apply to a Rule 12(b)(6) motion." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting Revell v. Port Auth. of N.Y. & N.J, 598 F.3d 128, 134 (3d Cir. 2010)). Like a motion to dismiss, under Rule 12(c), the court must "view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n. 4 (3d Cr. 1986). To survive a Rule 12(c) motion, a plaintiff's complaint must contain "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [alleged misconduct]." Bibbs v. Trans Union LLC., 43 F.4th 331, 339 (3d. Cr. 2022) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)) (internal quotations omitted)

### IV.    ANALYSIS

Defendants move for partial summary judgment and judgment on the pleadings arguing that Plaintiff failed to plead constructive discharge and thus, has waived any constructive discharge theory of recovery. (Doc. No. 29 at 2.) Alternatively, Defendants argue that even if Plaintiff adequately pled constructive discharge in her First Amended Complaint, Plaintiff failed to demonstrate sufficient facts to maintain a plausible constructive discharge theory because Plaintiff had the choice to remain employed but voluntarily resigned. (Id.) In response, Plaintiff argues

8

that she established a prima facie case of constructive discharge because when viewing the facts in a light most favorable to Plaintiff, it is possible for a reasonable jury to find that Defendants' actions immediately upon Plaintiff's return from FMLA leave created intolerable working conditions such that a reasonable person would resign. (Doc. No. 36 at 5.) For reasons that follow, the Court agrees with Plaintiff.

### A. Defendants' Motion for Partial Summary Judgment Will be Denied

Defendants argue that under the facts alleged, Plaintiff cannot maintain a constructive discharge theory because Plaintiff failed to demonstrate how her working conditions, during her transition to and while working as Corporate Safety Manager, were so intolerable that a reasonable person subject to them would have felt compelled to resign. (Doc. No. 29 at 8.) Defendants assert that Plaintiff: 1) admitted that her supervisors and coworkers were happy to have her in the Corporate Safety Manager position, 2) resigned based on her subjective beliefs and interpretations of the transition to Corporate Safety Manager, 3) made the same salary of $123,000 four months prior to assuming the Corporate Safety Manager position while in an equivalent level position, and 4) failed to explore reasonable alternative avenues prior to resigning. (Id. at 8-9.)

To establish a prima facie case of constructive discharge, Plaintiff must show the "employer knowingly permitt[ed] a condition of discrimination in employment so intolerable that a reasonable person subject to them would resign." Gross v. Exxon Off. Sys. CO., 747 F.2d 885, 888 (3d Cir. 1984). The test for constructive discharge is objective. Gray v. York Newspapers, Inc., 957 F.2d 1070, 1086 (3d Cir. 1992). The Third Circuit Court of Appeals recognizes several factors to consider when assessing a constructive discharge claim: "the employer (1) threat[en]ed [the employee] with discharge or urge[d] or suggest[ed] that she resign or retire, (2) demote[d] her, (3) reduce[d] her pay or benefits, (4) involuntarily transferred [her] to a less desirable position, (5) altered her job responsibilities, or (6) gave unsatisfactory job evaluations[.]" Gunn v. On the

9

Border Acquisitions, LLC, 298 F. Supp 3d 811, 824 (E.D.Pa. 2018) (citing Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010)).

Here, Plaintiff's First Amended Complaint contains sufficient factual matter to establish a prima facie case of constructive discharge. The acts central to the constructive discharge claim occurred when Plaintiff physically returned to work from FMLA leave on June 21, 2021, and until Plaintiff resigned from employment effective on August 4, 2021. Plaintiff contends that Defendants' "offer" for the Corporate Safety Manager position was a "sham" because, according to Plaintiff, she had no choice but to accept the position because: 1) she was pressured by Baugher to do so, 2) Defendants already planned to hire Abdullah, a woman thirty years younger than Plaintiff, to take Plaintiff's position, 3) the contents of the offer letter, 4) Defendants' past bonus distribution practices, and 5) if she didn't accept or agree to take the position, she would risk termination. (Doc. No. 11 at ¶¶ 60, 61.)

Plaintiff further contends that the transition to the Corporate Safety Manager position was a demotion because her salary was reduced, she received worse benefits including worse life insurance, and according to Plaintiff, Baugher explicitly demoted her when he mentioned putting "the right people" on the right "seats of the bus." (Id. at ¶ 56, 57, 59.) Lastly, Plaintiff asserts that her resignation was in part due to the discriminatory practices and FMLA violations she was subjected to since returning to work from leave. (Doc. No. 11 at ¶ 64.) Under these facts, Plaintiff has alleged a plausible constructive discharge claim.

Furthermore, when viewing the facts in the light most favorable to Plaintiff, there are several issues of material fact that preclude granting summary judgement on the issue of constructive discharge. First, according to Defendants, Plaintiff was offered the position of Corporate Safety Manager. (Doc. No. 29-3 at ¶ 21.) Further, Defendants contend that Plaintiff

voluntarily accepted the position. (Id. at 25.) However, Plaintiff asserts the offer was a "sham." (Doc. No. 36-1 at ¶ 21; Doc. No. 36-4 at 12.) Plaintiff believes it was a "sham" because she was 1) coerced into signing the "offer" letter, 2) pressured to do so, and 3) believed she had to accept in order to prevent her termination. (Doc. No. 36-1 at ¶ 25; Doc. No. 36-4 at 19; Doc. No. 11-1 at ¶ 62.) Thus, whether Plaintiff voluntarily or involuntarily accepted the position as Corporate Safety Manager is a material fact that is in dispute.

Second, the parties dispute whether Plaintiff's transition to the Corporate Safety Manager position was a demotion. According to Defendants, it was not a demotion because Plaintiff was offered a position that she attained four (4) months prior as Human Resources Manager which was of equivalent pay and salary. (Doc. No. 29 at ¶ 24.) Plaintiff refutes this assertion in part because the Corporate Safety Manager position paid a salary of $17,000 less than the Senior Manager of Human Resources position and had worse benefits including worse life insurance. (Doc. No. 36-1 at ¶¶ 24, 41.) Plaintiff also points to her conversation with Baugher, explaining that Baugher was "explicit" when he made a remark about putting "the right people" on the right "seats on the bus." (Doc. No. 11-1 at ¶ 56; Doc. No. 36-1 at ¶ 40.) Thus, whether Plaintiff was demoted one day after returning to work from FMLA leave is a material fact that is in genuine dispute.

Additionally, the parties dispute whether Plaintiff was subject to "intolerable" working conditions. Defendants allege that because Plaintiff was compensated with the same salary she had four (4) months prior, transitioned into an equivalent role she had four (4) months prior, and because Plaintiff's coworkers and supervisors were "happy" to have her, Plaintiff failed to establish "intolerable" working conditions. (Doc. No. 29 at ¶¶ 23-24.) Plaintiff instead argues that the "intolerable" conditions include, as stated above, a reduction in salary and benefits, involuntary transfer to a less desirable position, altered job responsibilities, and being required to train her

11

replacement. (Doc. No. 36 at 5; Doc. No. 36-4 at 13, 19, 27.) Furthermore, in Plaintiff's letter to Defendants' corporate parent, Plaintiff complained of the alleged discriminatory practices that Defendants knowingly engaged in which ultimately led to her resignation. (Doc. No. 29-1 at 15-18.) Accordingly, when construing the evidence in light most favorable to Plaintiff, there is sufficient evidence that a reasonable juror could find that Plaintiff's working conditions were so unpleasant that a reasonable person in Plaintiff's shoes would resign. Thus, Plaintiff has established sufficient material facts at this stage of litigation for a jury to determine whether the working conditions were so "intolerable" as to effectively force her to resign.

Lastly, the parties dispute whether Plaintiff explored alternatives before electing to resign. The Third Circuit usually requires that to establish a successful constructive discharge claim, an employee must "explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only opinion." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993).

According to Defendants, Plaintiff failed to explore alternatives before electing to resign because there was a possibility that Defendants would agree to increase Plaintiff's salary as Corporate Safety Manager. (Doc. No. 29 at ¶ 25.) Alternatively, Plaintiff asserts she did explore alternatives prior to resigning because before moving into the Corporate Safety Manager role, Plaintiff asked Baugher about keeping her former salary of $140,000 in which Baugher refused. (Doc. No. 36 at 6; Doc. No. 36-4 at 19.) Plaintiff additionally asserts that Defendants only reconsidered her salary once Plaintiff sent in her letter of resignation. (Doc. No. 36 at 6; Doc. No. 36-4 at 30.) From these facts and the letter Plaintiff sent to Defendants' corporate parent, there is a genuine dispute of material fact as to whether Plaintiff explored alternatives before electing to resign.

In sum, viewing the evidence in the light most favorable to Plaintiff, there remain genuine disputes of material facts as to whether Plaintiff was constructively discharged. Accordingly, Defendants' Motion for Summary Judgment will be denied.

### B. Defendant's Motion for Judgment on the Pleadings Will be Denied

Next, Defendants assert that Plaintiff's failure to include the words "constructive discharge" in her First Amended Complaint precludes Plaintiff from claiming constructive discharge because Plaintiff instead pled "affirmative termination." (Doc. No. 29 at ¶ 2.) Defendants further argue Plaintiff failed to plead any constructive discharge elements. (Id.) Plaintiff denies Defendants' "hyper-technical" assertion and rebuts by arguing that her First Amended Complaint establishes a prima facie case of constructive discharge. (Doc. No. 36 at 1.) Again, the Court agrees with Plaintiff.

In Pennsylvania State Police v. Suders, the United States Supreme Court held that in the realm of constructive discharge, an employee's resignation is treated as tantamount to an actual termination. 542 U.S. 129, 142-43 (2004). That is, an additional element to a constructive discharge claim must be that the employee actually resigned in the face of discriminatory conduct of the employer. Green v. Brennan, 578 U.S. 547, 555 (2016). In Green v. Brennan, the United States Supreme Court clarified: "[a] claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee." (Id.) Here, Defendants misconstrue the constructive discharge doctrine by asserting that an employee must be "terminated" and cannot voluntarily "resign" from employment after experiencing discriminatory conduct from the employer. The latter may also form the basis for a constructive discharge claim. Because Plaintiff has plausibly alleged that she resigned in the face of discriminatory conduct by

13

her employer, Defendants' argument is not persuasive. Therefore, Defendants' Motion for Judgment on the Pleadings will be denied.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment and Judgement on the Pleadings on the Issue of Constructive Discharge (Doc. No. 29) will be denied. An appropriate Order follows.